UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

UNITED STATES OF AMERICA,

                  Plaintiff,                  MEMORANDUM & ORDER
                                                              16-CR-298

    v.

JASON SOTO,

                  Defendant.

-------------------------------------------------------------x
GLASSER, Senior United States District Judge:

On May 30, 2017, a grand jury returned a three-count superseding indictment charging the defendant, Jason Soto, with (i) possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1); (ii) selling a firearm to a convicted felon, in violation of 18 U.S.C. § 922(d)(1); and (iii) distributing cocaine base, in violation of 21 U.S.C. § 841(a)(1). ECF 39.[1] On June 14, 2017, after a three-day jury trial, the defendant was convicted on all counts. ECF 59. Before the Court is the defendant's motion, under Rule 33 of the Federal Rules of Criminal Procedure, for a new trial. ECF 70. For the reasons outlined below, the defendant's motion is denied.

## LEGAL STANDARD

Rule 33 provides that a district court may vacate a judgment and order a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). To decide a Rule 33 motion, the district court may independently assess the evidence and the credibility of witnesses, but it must be careful not to "wholly usurp" the jury's role. *United States* v. *Ferguson*, 246 F.3d 129, 133 (2d Cir. 2001)

---

[1] The defendant was initially indicted on June 3, 2016, on substantially the same charges. ECF 1.

(internal quotation marks omitted). Though the rule confers broad discretion on the trial court to grant a new trial, the Second Circuit has cautioned that the trial court "must exercise the Rule 33 authority 'sparingly' and in 'the most extraordinary circumstances.'" *Id.* at 134 (quoting *United States* v. *Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992)). "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice." *Sanchez*, 969 F.2d at 1414. Stated differently, "[t]here must be a real concern that an innocent person may have been convicted." *United States* v. *Snype*, 441 F.3d 119, 140 (2d Cir. 2006) (internal quotation marks omitted). "The defendant bears the burden of proving that he is entitled to a new trial under Rule 33." *United States* v. *McCourty*, 562 F.3d 458, 475 (2d Cir. 2009).

## DISCUSSION

The defendant's motion rests on fewer than twenty lines of a nearly 500-page trial transcript, all concerning the same subject matter: the background of the investigation that led to the two controlled sales for which the defendant was charged and convicted. Specifically, the defendant takes exception to (i) two questions the government asked two witnesses about the background of the investigation, (ii) the witnesses' responses to those questions, and (iii) the government's brief recitation of that testimony during its summation. The defendant objected to this testimony (and the government's reference to it during summation) at trial, and it now forms the basis of his Rule 33 motion. As discussed below, the Court concludes that the testimony in question was relevant and not unduly prejudicial and that, in any event, the evidence against the defendant was overwhelming, and for these reasons the defendant's motion is denied.

The purportedly objectionable testimony can be dispatched briefly. While the defendant was charged only with the weapons and drug charges recounted above, the FBI's two-year investigation into the Cypress Hill Houses in Brooklyn focused largely on a series of murders, two

2

of which the government attributes to the defendant. The disputed testimony hinted at that violence. First, towards the beginning of the government's direct examination of the FBI case agent, Special Agent Steven Schiliro, the following exchange occurred:

> Q: What was the goal of the [Cypress Hill Houses] investigation?
>
> . . . .
>
> A: There had been an increase in the violence that was occurring in and around Cypress Hill Housing projects, and we began to work a proactive investigation focusing on narcotics trafficking, gun trafficking and the violence that I just described.

Tr. at 139. Next, during the direct examination of the government's confidential source, James Pratt, the government asked him "how it came about that [he] started working with the FBI," *id.* at 230, and he answered as follows:

> A: My [parole officer]. My PO said it was some people wanted to talk to me about some things, and I came in his office, and I met with one of the agents. Agent say he had a problem with the—
>
> . . . .
>
> A: A problem with the violence or whatever. It been a string of murders, or whatever, kids, people, all types of just nonsense going on.

*Id.* And finally, in the second paragraph of its summation, the government referred back to this testimony as follows:

> So how did this all start? Well, Agent Schiliro told you about it on Monday. It started with the FBI investigating violent crime in the Cypress Hills Houses, in Brooklyn. Agent Schiliro explained to you that there was an increase in violence in Cypress, and the FBI was looking to proactively try to curb drug-trafficking, to try to curb gun-trafficking, and to try to curb violence. So as part of its investigation, the FBI was looking for a source on the inside who they could work with, and they found James Pratt.

*Id.* at 391-92. The defendant objected to this testimony at trial and twice moved for a mistrial based on its admission. *Id.* at 139, 230, 271-72, 439. Now, in his Rule 33 motion, the defendant

3

argues that this testimony was irrelevant, unduly prejudicial, and potentially confusing or misleading to the jury. *See* ECF 70 at 8-13.

To begin with, the Court disagrees, now as at trial, with the defendant's evidentiary analysis: The disputed testimony was relevant, and its probative value was not outweighed by the risk of unfair prejudice, confusing the issues, or misleading the jury. "To be relevant, evidence need only tend to prove the government's case, and evidence that adds context and dimension to the government's proof of the charges can have that tendency." *United States* v. *Gonzalez*, 110 F.3d 936, 941 (2d Cir. 1997). As such, evidence is often admissible "to provide background for the events alleged in the indictment" or "to enable the jury to understand the complete story of the crimes charged." *United States* v. *Reifler*, 446 F.3d 65, 91-92 (2d Cir. 2006) (internal quotation marks omitted). Here, the government has ably enumerated the many reasons why testimony regarding the background of the investigation was probative, *see* ECF 72 at 4, but perhaps nothing better demonstrates the testimony's relevance and probative value than that the defendant argues it was unduly prejudicial because it "excused the FBI's hiring of Pratt," ECF 70 at 14. Indeed, testimony regarding the background of the investigation did serve to ***explain*** why the FBI hired Pratt—a convicted felon whom the defense cross-examined thoroughly regarding his criminal history; the government was entitled to provide this explanatory background, on which neither the government nor the witnesses elaborated.

The disputed testimony was not unduly prejudicial, confusing, or misleading either. As to prejudice, the defendant's hyperbolic contention that the testimony "made Cypress Hill an Armageddon," suggested that "[a]nyone somehow associated with crime in that neighborhood . . . should be punished," and somehow "made Mr. Soto a proxy for the jury of all that alleged violence," ECF 70 at 12, is belied by the record. The disputed testimony only briefly mentioned

the violence in Cypress Hill, and neither the government nor the witnesses tied the defendant to that violence. The defendant's argument that the testimony "may also have confused or misled the jury," *id.*, likewise lacks logical and record support, which is perhaps why the argument consists solely of a conclusory assertion.

Even if it had concluded, upon reexamination, that the disputed testimony was improperly admitted, the Court would still deny the defendant's Rule 33 motion. It beggars belief that the brief background mentions of violence in Cypress Hills played any significant role in the jury's deliberation, let alone a dispositive one; the evidence against the defendant in this case—comprehensively summarized by the government in its brief, ECF 72 at 2—was simply overwhelming. In this way, this case is easily distinguishable from *United States* v. *Williams*, 585 F.3d 703 (2d Cir. 2009), on which the defendant relies. *See id.* at 709-10 (vacating conviction where "[t]he Government's case was by no means overwhelming" and the improperly admitted evidence was "'critical' to the Government's case" and "also devastating to [the defendant]"). Any arguable evidentiary error here was harmless. The jury reached the only verdict it could have—and the same verdict it would have reached if the Court had precluded the disputed testimony.

## CONCLUSION

For the reasons stated above, the defendant's Rule 33 motion is hereby denied.

SO ORDERED.

Dated: Brooklyn, New York
January 23, 2018

/s/
I. Leo Glasser                U.S.D.J.